**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

RALPH F. PATTEN, JR.,
              *Plaintiff-Appellant,*

v.

SIGNATOR INSURANCE AGENCY,
INCORPORATED; SIGNATOR INVESTORS,
INCORPORATED; JOHN HANCOCK
MUTUAL LIFE INSURANCE COMPANY,
              *Defendants-Appellees.*

No. 05-1148

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(CA-02-1745-BEL)

Argued: February 2, 2006

Decided: March 13, 2006

Before WIDENER, LUTTIG, and KING, Circuit Judges.

---

Vacated and remanded by published opinion. Judge King wrote the
majority opinion, in which Judge Widener joined. Judge Luttig wrote
a dissenting opinion.

---

**COUNSEL**

John Michael Shoreman, MCFADDEN & SHOREMAN, Washing-
ton, D.C., for Appellant. Michael Joseph Murphy, OGLETREE,
DEAKINS, NASH, SMOAK & STEWART, P.C., Washington, D.C.,
for Appellees.

**OPINION**

KING, Circuit Judge:

Appellant Ralph F. Patten, Jr., appeals from the district court's denial of his motion to vacate an arbitration award rendered in favor of John Hancock Mutual Life Insurance Company, Signator Insurance Agency, Incorporated, and Signator Investors, Incorporated (collectively the "respondents"). *Patten v. Signator Ins. Agency, Inc.*, No. 02-1745 (D. Md. Jan. 4, 2005). By this appeal, Patten seeks only to vacate that aspect of the arbitration award dismissing as time-barred his claims against Signator Investors. Patten asserts that the arbitrator acted without authority when he unilaterally imposed an implied one-year limitations period onto the governing arbitration agreement between Patten and Signator Investors. As explained below, the arbitration agreement does not explicitly prescribe any limitations period with respect to an arbitration demand, and it supersedes all other agreements between the parties. In the circumstances presented, the arbitrator's ruling constituted a manifest disregard of the law and was not drawn from the essence of the governing arbitration agreement. As a result, we vacate the district court's refusal to vacate the arbitration award as to Signator Investors, and we remand for further proceedings.

I.

A.

Patten first began working as a sales agent for Hancock in the Washington, D.C. area in 1972. In 1989, he became a General Agent for Hancock in Bethesda, Maryland. In 1992, he entered into an agreement with Hancock and its affiliates, designated as a "Mutual Agreement to Arbitrate Claims" (the "Mutual Agreement"). J.A. 18.[1] The Mutual Agreement required, inter alia, that any claims arising between Patten and Hancock (or any of Hancock's affiliates or subsidiaries) were to be resolved by mandatory arbitration. The Mutual Agreement specifically provided, in a section captioned "Required

---

[1]Citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Notice of all Claims and Statute of Limitations," that an "aggrieved party must give written notice of any claim to the other party within one (1) year of . . . the event giving rise to the claim," or the claim would be deemed waived. *Id.* It is undisputed that Signator Investors was an "affiliate" of Hancock and thus a party to the Mutual Agreement.

In 1998, Patten entered into a new and superseding agreement with Signator Investors, to become its branch manager in Bethesda (the "Management Agreement").[2] The Management Agreement provided, inter alia, that "Signator [Investors] and Branch Manager [Patten] mutually consent to the resolution by arbitration of all claims or controversies." Management Agmt. ¶ 11. The Management Agreement was silent, however, on any requirements of timing or manner with respect to an arbitration demand. The Management Agreement also provided that it "supersedes all previous agreements, oral or written, between the parties hereto regarding the subject matter hereof." *Id.* at ¶ 12. Finally, the Management Agreement mandated that it was to "be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." *Id.* at ¶ 13.

On October 18, 1999, Hancock reprimanded Patten for alleged deficiencies in his performance as a General Agent — specifically, for advancing premiums on behalf of his clients, in violation of company policy. On December 13, 2000, the respondents each terminated Patten, effective January 2, 2001. On August 2, 2001, Patten sent a letter to the respondents advising them that he had been wrongfully terminated and discriminated against because of his age, and that he was preparing to file a lawsuit on the basis of these claims. The respondents, by letter of August 30, 2001, advised Patten that his allegations were "unequivocally denie[d]," and the parties then apparently entered into unsuccessful settlement negotiations.

On March 4, 2002, Patten forwarded the respondents a demand for arbitration, asserting claims of discrimination, wrongful termination,

---

[2]The Management Agreement, found in the Joint Appendix at J.A. 22-26, also authorized Patten to serve as a sales agent for Signator Insurance. Neither Hancock nor Signator Insurance were parties to the Management Agreement.

and breach of contract. On March 13, 2002, the respondents informed Patten by letter that they would not arbitrate because his demand for arbitration was made fourteen months after his termination, and thus was not "timely or proper" under the Mutual Agreement's one-year limitations period. On March 14, 2002, Patten replied that the Management Agreement (rather than the Mutual Agreement) governed his claims against Signator Investors, and that he would seek judicial enforcement of his rights if the respondents refused to arbitrate.

B.

On May 20, 2002, Patten filed a complaint for enforcement of arbitration in the District of Maryland, seeking to compel arbitration. The parties thereafter filed cross-motions for summary judgment and, on November 5, 2002, the court ruled in favor of Patten and directed the respondents to submit to arbitration. *Patten v. Signator Ins. Agency, Inc.*, No. 02-1745, slip op. at 1 (D. Md. Nov. 5, 2002). Because the court concluded that arbitration should be compelled "under the Mutual Agreement, the Court [found] it unnecessary to address Plaintiff's argument regarding the Management Agreement." *Id.* In its opinion, the court observed that all other questions concerning the arbitration — including the satisfaction of time and notice requirements — were "within the arbitrator's purview." *Id.* at 2.

The parties entered into arbitration in 2003 under the auspices of the American Arbitration Association (the "AAA"). On January 24, 2003, Patten filed a demand for arbitration with the AAA, making allegations of (1) wrongful termination, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) unlawful discrimination in violation of federal law as well as the law of Massachusetts and Maryland. After selecting an arbitrator under the procedures of the AAA, the parties engaged in discovery and exchanged witness lists. On December 8, 2003, the respondents filed a motion for summary judgment in the arbitration proceedings, asserting, inter alia, that Patten had failed to comply with the one-year notice provision of the Mutual Agreement. On December 18, 2003, Patten filed an opposition to the respondents' summary judgment request, asserting that the arbitration proceedings arose under both the Management Agreement and the Mutual Agreement. Patten contended that he had complied with the applicable notice requirements

of each agreement — maintaining that his August 2, 2001 letter substantially complied with the one-year notice requirement in the Mutual Agreement, and that the Management Agreement contained no limitations period governing when an arbitration demand was to be made.[3]

By his arbitration award of January 10, 2004, the arbitrator dismissed the arbitration proceedings as time-barred and entered summary judgment for the respondents, without conducting a hearing on the merits. *See* Arb. Award at 6.[4] As a preliminary matter, he determined that the arbitration proceedings were governed by both the Mutual Agreement and the Management Agreement. While the arbitrator accurately observed that the Management Agreement contained no notice requirement, he determined that it "necessarily contain[ed] an implied term limit." *Id.* The arbitrator then "look[ed] to the Mutual Agreement for guidance," and "adopt[ed]" its one-year limitations period. *Id.* at 7.[5] Because Patten sent his demand for arbitration fourteen months after his termination in January 2001, the arbitrator dismissed Patten's claims "on the sole ground that Claimant's March 4, 2002 Demand for Arbitration is time-barred." *Id.* at 7.

C.

On April 9, 2004, Patten filed a motion in the district court proceedings seeking to vacate the arbitration award's determination that the claims in arbitration under the Management Agreement were time-barred. By this motion, Patten contended that the arbitrator had acted in manifest disregard of the law, and had failed to draw his award from the essence of the agreement, by concluding that the Management Agreement contained an implied one-year limitations

---

[3]Patten also asserted in the arbitration proceedings that advancing a client's premium is a common practice condoned by the respondents and was a pretext for his termination. He alleged that his termination was actually motivated by the respondents' intention to replace him at the Bethesda office with a younger Branch Manager.

[4]The arbitration award is in the Joint Appendix at J.A. 40-46.

[5]In his award, the arbitrator noted that if Patten's claims had not been time-barred, Patten's allegations and supporting affidavits would have warranted a hearing on the merits. *See* Arb. Award at 6.

period on the filing of an arbitration demand. Patten asserted that the Management Agreement explicitly provided that it "supersede[d]" all previous agreements, and its lack of any limitations period had to be construed against Signator Investors, which had drafted it. On January 4, 2005, the district court denied the motion to vacate, concluding that the arbitrator had not ignored any governing legal principles, and that, in any event, an arbitrator's misinterpretation of an arbitration agreement is not a basis for vacating an arbitration award. *Patten v. Signator Ins. Agency, Inc.*, No. 02-1745, slip op. at 3 (D. Md. Jan. 4, 2005). Patten has filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

The process and extent of federal judicial review of an arbitration award are substantially circumscribed. As a general proposition, a federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the Federal Arbitration Act, *see* 9 U.S.C. § 10(a),[6] or upon a showing of certain limited common law grounds. The permissible common law grounds for vacating such an award, which constitute the essential premises of this appeal, include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law. *See Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 & n.5 (4th Cir. 1998). In reviewing a denial of a motion to vacate an arbitration award, we review the district court's determinations of law de novo. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995); *Apex Plumbing*, 142 F.3d at 191 n.1.

---

[6]The Federal Arbitration Act provides that a federal court may vacate an arbitration award on the following grounds: (1) the award was procured by corruption, fraud, or undue means; (2) partiality or corruption in the arbitrators; (3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner which prejudiced a party's rights; or (4) the arbitrator exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10(a).

III.

A.

This dispute was submitted to arbitration pursuant to two separate agreements: first, the Mutual Agreement of 1992, which Patten entered into with Hancock and its affiliates (which included Signator Investors); and second, the Management Agreement, which Patten and Signator Investors entered into in 1998.[7] On appeal, however, Patten seeks only to vacate the arbitrator's dismissal of his claims under the Management Agreement against Signator Investors. Importantly, he does not, in this appeal, take issue with those aspects of the arbitration award dismissing his claims against Hancock and Signator Insurance as time-barred under the Mutual Agreement. Appellant's Br. at 4. Thus, the governing arbitration agreement in this appeal is contained in Paragraph 11 of the Management Agreement between Patten and Signator Investors. That arbitration agreement provides, in pertinent part:

> Signator [Investors] and Branch Manager [Patten] mutually consent to the resolution by arbitration of all claims or controversies ("claims") . . . that Signator [Investors] may have against Branch Manager or that Branch Manager may have against Signator [Investors] . . . . The claims covered by this consent to arbitration include all claims arising out of or in connection with the business of Signator [Investors]. . . .

Management Agmt. ¶ 11.

---

[7]Because the district court's order compelling arbitration declined to reach the issue of whether the parties were obliged to arbitrate under the Management Agreement, its ruling did not preclude the arbitrator from assessing the parties' rights under that agreement. *Patten v. Signator Ins. Agency, Inc.*, No. 02-1745, slip op. at 1 (D. Md. Nov. 5, 2002). And, significantly, Signator Investors has not contended in these proceedings that the arbitrator lacked the authority to arbitrate this dispute under the Management Agreement.

B.

Patten contends that the arbitration award should be vacated as to Signator Investors because the arbitrator's most crucial ruling — that the governing arbitration provision in the Management Agreement contained an implied time limitation on an arbitration demand — constituted a manifest disregard of the law, and failed to draw its essence from the agreement. In seeking to vacate an arbitration award, of course, an appellant "shoulders a heavy burden." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). Put simply, an arbitrator's legal determination "may only be overturned where it is in manifest disregard of the law," and an arbitrator's interpretation of a contract must be upheld so long as it "draws its essence from the agreement." *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) (internal quotation marks omitted). Under our precedent, a manifest disregard of the law is established only where the "arbitrator[ ] understand[s] and correctly state[s] the law, but proceed[s] to disregard the same." *Id.* (internal quotation marks omitted). Moreover, an arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has "misread the contract." *Id.* (internal quotation marks omitted). An arbitration award fails to draw its essence from the agreement only when the result is not "rationally inferable from the contract." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir. 1998).[8]

In supporting the district court's ruling on the motion to vacate, Signator Investors relies solely on the circumscribed scope of review which we are obliged to apply in assessing an arbitration award. And although the authority of an arbitrator is broad, and subject to great deference under the applicable standard of review, "it is not unlimited." *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848,

---

[8]While the "essence of the agreement" standard was first articulated by courts reviewing labor arbitration awards, the courts have generally acknowledged that it applies to other arbitration proceedings as well. *See Apex Plumbing*, 142 F.3d at 193 n.5; *see also, e.g.*, *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 854 (8th Cir. 2001). *But see Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220-21 (2d Cir. 2002).

855 (8th Cir. 2001) (internal quotation marks omitted) (vacating award where arbitrator awarded damages in contravention of express contractual provisions). For example, an arbitrator has acted in manifest disregard of the law if he "disregard[s] or modif[ies] unambiguous contract provisions." *Id.* (internal quotation marks omitted). Moreover, an award fails to draw its essence from the agreement if an arbitrator has "based his award on his own personal notions of right and wrong." *Upshur Coals*, 933 F.2d at 229. In such circumstances, a federal court has "no choice but to refuse enforcement of the award." *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000) (internal quotation marks omitted) (affirming district court's vacatur of award where arbitrator refused to conduct hearing as required by agreement); *see also U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 531 (4th Cir. 2000) (affirming vacatur of award to probationary employee who was clearly excluded from arbitration agreement).

In this case, as explained below, the arbitrator disregarded the plain and unambiguous language of the governing arbitration agreement when he concluded that it included an implied one-year limitations period. In so doing, the arbitrator acted in manifest disregard of the law and failed to draw his award from the essence of the agreement.

C.

In assessing the timeliness of Patten's arbitration demand, the arbitrator correctly recognized that the Management Agreement contained no explicit time limitation. The arbitrator nonetheless determined, however, that the Management Agreement "necessarily contain[ed] an implied term limit." Arb. Award at 6. In certain instances, when the contracting parties have failed to specify a term that is essential to the determination of their rights and duties under an arbitration agreement, the arbitrator may supply a term that is "reasonable in the circumstances." *See* Restatement (Second) of Contracts § 204 (1981); *see also Mo. River Serv.*, 267 F.3d at 855. In the circumstances of this case, however, the one-year limitations period imposed by the arbitrator was not reasonable, in that it contradicted the plain and unambiguous terms of the Management Agreement.

The Management Agreement unambiguously provided that, as to its parties (Patten and Signator Investors), it "supersede[d]" the

Mutual Agreement. *See* Webster's II New College Dictionary 1107 (1995) (defining "supersede" as "to replace" or "to cause to be set aside or replaced by another"). Despite this clear repudiation of the Mutual Agreement by both Patten and Signator Investors, the arbitrator proceeded to "look to the Mutual Agreement for guidance" and "adopt[ed]" its one-year limitations period. Arb. Award at 7. In so doing, he failed to heed the plain and unambiguous terms of the Management Agreement — not only had Patten and Signator Investors contractually agreed that the Mutual Agreement was superseded, they had also chosen to omit certain of its terms from the Management Agreement, including the one-year limitations period. *See* Management Agmt. ¶ 12.

Moreover, the arbitrator ignored the fact that the Management Agreement provided that it was to "be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Management Agmt. ¶ 13. If the arbitrator felt the need to import a limitations period into the Management Agreement, the most obvious source was that which governed their agreement: Massachusetts law. And under Massachusetts law, claims of wrongful termination and discrimination are subject to a three-year statute of limitations, *see* Mass. Gen. Laws ch. 260, § 2A, § 5B, and contract claims must be filed within a six-year period, *see id.* § 2. Utilizing either of these limitations periods, Patten's March 2, 2002 demand for arbitration — submitted to Signator Investors within fourteen months of his termination — would have been timely.

Put succinctly, the arbitrator appears to have revised the governing arbitration agreement on the basis of his own "personal notions of right and wrong," and imposed a limitations period on the parties that they had specifically rejected. *See Upshur Coals*, 933 F.2d at 229; *see also U.S. Postal Serv.*, 204 F.3d at 527 ("When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job."). Consequently, this dispute does not fall into the category of awards based on "misapplication of principles of contractual interpretation [or] erroneous interpretation," which are not to be disturbed by judicial review. *See Apex Plumbing*, 142 F.3d at 194. Rather, the arbitrator in this instance simply "amend[ed] or alter[ed] the agreement," and thus he "act[ed] without authority." *Mo. River Serv.*, 267 F.3d at 855 (internal quotation marks omitted). The arbitra-

tor's ruling thus resulted in an award that, in the language of *Apex Plumbing*, simply was "not rationally inferable from the contract." *See* 142 F.3d at 193 n.5.

Although our standard of review of an arbitration award is properly a limited and deferential one, it does not require that we affirm an award that contravenes the plain and unambiguous terms of the governing arbitration agreement. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Mo. River Serv.*, 267 F.3d at 855. In these circumstances, the arbitration award as to Patten and Signator Investors failed to draw its essence from the governing arbitration agreement and was made in manifest disregard of the law.

IV.

Pursuant to the foregoing, we vacate the district court's denial of Patten's motion to vacate the arbitration award as to Signator Investors. We remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

LUTTIG, Circuit Judge, dissenting:

I agree with the majority that the arbitrator's interpretation of the Management Agreement was clearly erroneous. I cannot join its opinion, however, because under our precedents, clear error alone is insufficient to vacate an arbitrator's award. Accordingly, I would affirm the district court's denial of appellant's motion to vacate the arbitration award.

In *Remmey* v. *Painewebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994), we held that an arbitrator does not manifestly disregard the law unless he "understand[s] and correctly state[s] the law, but proceed[s] to disregard the same," *see ante* at 8. Although the majority quotes this standard, it neglects the critical explanation of this standard. In that critical explanation, we emphasized that the "appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to

ignore it in propounding their decision." *Remmey*, 32 F.3d at 149. It is obvious in this case that appellant has not even come close to meeting this standard. He cannot demonstrate, nor does anything in the arbitration ruling reflect, that the arbitrator was even aware that the Management Agreement included a clause superseding all previous agreements between the parties, let alone that the arbitrator knew the clause existed, recognized that it superseded the Mutual Agreement, and yet chose to ignore it and nevertheless interpret the Management Agreement in light of the Mutual Agreement. *See* J.A. 44-46.

The majority is similarly in error when it concludes that the arbitrator's award failed to "draw its essence from the agreement" because the arbitrator "based his award on his own personal notions of right and wrong." *See ante* at 8-9, 10-11; *Upshur Coals Corp.* v. *United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991). *Upshur Coals* equated awards where "the arbitrator must have based his award on his own personal notions of right and wrong" with awards where the arbitrator was not "even arguably construing or applying the contract." *See* 933 F.2d at 229. Appellant does not come close to meeting this standard either, because there is no doubt that the arbitrator was attempting to construe the Management Agreement. *See* J.A. 44-46. The arbitrator's failure to notice the clause simply was not a bad faith abdication of his duty to ground the award in the Management Agreement prompted by an illicit desire to rule in favor of appellees.

At worst, because of a failure to notice the superseding clause, the arbitrator's error arose because he believed that he had to render the two agreements consistent, which led him to imply a notice requirement into the Management Agreement even though no such requirement is expressed in that agreement. *See* J.A. 44-46. We have squarely held that "as a matter of law," an award cannot be vacated merely on the basis of the "misinterpretation of a contract." *See Apex Plumbing Supply, Inc.* v. *U.S. Supply Co.*, 142 F.3d 188, 193-94 (4th Cir. 1998). Indeed, in *Apex Plumbing*, the party seeking to challenge the award made an unsuccessful argument that was almost identical to the one that Patten does in this case, claiming that "more than a mere 'misinterpretation' of the contract had transpired because the arbitrator's valuation decision irrationally disregarded an unambiguous provision of the Agreement." *Id.* at 194. Rejecting the argument,

we held that "merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement; neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes ground for vacating an award." *Id*. *Apex Plumbing* confirms that the error made by the arbitrator in this case does not rise to the level that permits vacatur by this court.

The level of deference that this court has bestowed upon arbitrators is extraordinary. It may even be excessive. However, we are bound by this standard until such time as it is reconsidered by the court en banc. *See United States* v. *Collins*, 415 F.3d 304, 311 (4th Cir. 2005). I would, concededly with some reluctance, apply this standard and affirm the district court's refusal to vacate the arbitrator's award.