**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2175**

KIRAN M. DEWAN, CPA, P.A., a Maryland close corporation;
KIRAN MOOLCHAND DEWAN, a citizen of Maryland,

        Plaintiffs-Appellants,

      v.

ARUN WALIA, a non-resident alien, citizen of Canada,

        Defendant-Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Richard D. Bennett, District Judge.
(1:11-cv-02195-RDB)

Argued: September 18, 2013        Decided: October 28, 2013

Before DAVIS, WYNN, and DIAZ, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion. Judge
Wynn wrote a dissenting opinion.

**ARGUED:** Paul Steven Schleifman, SCHLEIFMAN AND KOMIS PLLC,
Arlington, Virginia, for Appellants. Mark G. Chalpin, MARK G.
CHALPIN, ESQUIRE, Gaithersburg, Maryland, for Appellee. **ON
BRIEF:** Ramesh Khurana, THE KHURANA LAW FIRM, LLC, Rockville,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kiran Dewan and his close corporation, Kiran M. Dewan, CPA, P.A. ("the Company") (collectively, "Appellants"), appeal from the district court's confirmation of an arbitral award in favor of the Company's former employee, Appellee Arun Walia. Walia came to the United States from Canada in 2003 on an employment visa to work for the Company as an accountant.[1] By 2009, the parties agreed to a parting of the ways, in connection with which Walia executed a broadly worded Release Agreement ("the Release") in consideration for the Company's payment of $7,000.

The parting proved less than amicable. In January 2010, Appellants filed a demand for arbitration against Walia, alleging that Walia breached the noncompetition/nonsolicitation provisions in his employment agreement. Despite the Release, Walia asserted numerous counterclaims in the arbitral forum, primarily alleging that the Company had underpaid him during his employment and that Appellants had run afoul of federal immigration law attendant to the visa program. The Arbitrator found in favor of Walia on Appellants' original claims. She also

---

[1] Appellant Kiran M. Dewan is an attorney as well as a CPA, and he represented Walia in connection with the application and processing of the latter's non-immigrant work visa. In Spring 2013 Dewan was named with others in an indictment filed in the District of Maryland charging conspiracy to bribe an immigration official in order to obtain lawful permanent residence, employment authorization documents, and green cards.

concluded, however, that the Release was valid and enforceable, but nevertheless made a substantial monetary award in Walia's favor, holding Appellants jointly and severally liable.

In due course, the parties filed opposing petitions to vacate and to confirm/enforce the award in federal district court. The district court confirmed the award and granted Walia's motion for attorney's fees and costs.

For the reasons that follow, we hold that the award in favor of Walia is the product of a manifest disregard of the law by the Arbitrator. Accordingly, we vacate the judgment and remand to the district court with instructions to vacate the award.

I.

A.

Walia, a Canadian national, came to the United States in 2003 on an employment visa to work for the Company as an accountant. He entered into a three-year employment agreement. In 2006, Walia and the Company entered into a second three-year employment agreement ("the 2006 Employment Agreement") extending through March 23, 2009. The 2006 Employment Agreement included nonsolicitation and noncompetition provisions, as well as a broad arbitration provision. Dewan signed it in his capacity as president of the Company.

3

In February and March 2009, Walia underwent treatment for thyroid cancer. On approximately March 14, 2009 (as the termination date for the 2006 Employment Agreement approached), the Company's office manager, Veena Sindwani (who was also Dewan's wife), went to the intensive care unit to see Walia. The parties dispute the events occurring in the hospital. Walia contended (and the Arbitrator later found) that Sindwani presented him with a new employment agreement, which he signed. Appellants contended that no such agreement existed.

In any event, Walia continued to work for the Company through at least August 21, 2009. The parties vigorously dispute the circumstances surrounding the termination of Walia's employment. This much is undisputed: Though no termination letter was ever sent to Walia, on November 3, 2009, Walia executed the Release, which "release[d] and discharge[d]" Appellants from claims related to Walia's employment in exchange for $7,000. J.A. 250-52.[2] The Release provided for "binding arbitration" should a dispute arise concerning the Release or its performance. J.A. 251. As with the 2006 Employment Agreement, Dewan signed it in his capacity as president of the Company.

B.

---

[2] The text of the Release is set forth infra pages 15-16.

4

Less than three months after Walia executed the Release, on January 29, 2010, Dewan initiated arbitration proceedings against Walia with the American Arbitration Association. Dewan asserted that Walia "breached an employment agreement by competing with and soliciting the clients of the employer," and "breached a settlement and release agreement by making various claims against the Employer (Claimant)." J.A. 21.[3]

Walia asserted several counterclaims. He alleged, among other things, that (1) based on his years of accounting experience he was underpaid (in apparent violation of the relevant immigrant work visa regulations) during his time at the Company; (2) the Company breached the profit-sharing terms of the 2006 Employment Agreement; and (3) Dewan, Walia's immigration attorney of record, fraudulently sought to withdraw Walia's employment authorization.

The Arbitrator conducted four days of hearings in 2011 and issued a so-called interim award ("the Interim Award") in Walia's favor. The Arbitrator found, among other things, that

> (1) no cognizable claims survived the employment
> agreements from 2003 and 2006 based on the applicable
> statute of limitations;

---

[3] Walia had filed an administrative complaint with the United States Department of Labor asserting that he was not paid the appropriate "required wage" as mandated by the non-immigrant employment visa program. See 8 U.S.C. §§ 1182(a)(5)(A), 1182(n); 20 C.F.R. §§ 655.731, 655.731(a)(1) and (a)(2).

5

(2) "there [was] a viable Employment Agreement drafted by [Dewan] and signed by [Walia] on March 14, 2009 [during the hospital visit]," which Dewan had simply refused to produce;

(3) "NO termination letter was ever sent" by Dewan, and therefore the employment relationship continued through the date of the arbitration proceedings;

(4) Dewan's claims that Walia solicited the Company's clients and used the Company's confidential materials in an unauthorized manner were "baseless";

(5) Walia "voluntarily" signed the Release and thereafter negotiated checks totaling the $7,000 paid by Dewan for the Release, and Walia was therefore "legally bound" by the Release to the extent that it barred "all tort and contractual claims in federal or state courts as well as attorney's fees";

(6) the continuing "employment relationship" allowed for an award of compensatory damages stretching back to 2003 despite the bar of the statute of limitations;

(7) punitive damages were justified because Dewan "purposefully harmed" Walia's immigration interest by failing to tell Walia prior to withdrawing the Company's sponsorship of him as required by federal law, and because Walia "had to defend himself" against Appellants' "baseless claims";

(8) tax returns that Dewan provided in discovery were significantly different than those Dewan submitted to the U.S. Department of Labor ("the DOL");

(9) the statutory remedies for failure to pay prevailing wages under the Immigration and Nationality Act ("INA") were not exclusive, and the Arbitrator could order damages based on a violation of the INA; and

(10) the Arbitrator had given the award "interim" status to "await . . . guidance in this case from DOL's investigation" of Appellants.

J.A. 60-69.

6

On November 18, 2011, the Arbitrator issued a final award ("the Final Award"). The Arbitrator first recounted a series of developments since the Interim Award. These included a finding that Dewan "was a party to fraud" based on the differences between documents obtained by Walia through FOIA requests and documents provided in discovery. J.A. 189. The Arbitrator then awarded Walia $387,108.20 in compensatory damages and $70,000 in punitive damages, and found that Dewan and the Company were jointly and severally liable for the combined $457,108.20.

On December 16, 2012, Appellants filed an amended complaint in their previously filed federal court action challenging the Final Award.[4] Eventually thereafter, Walia filed a petition to confirm and enforce the Final Award.

---

[4] Curiously, Appellants did not simply file a petition to vacate the award, but instead filed a civil complaint asserting ten "claims" in separately numbered "counts" pursuant to the Maryland Uniform Arbitration Act ("the MUAA"), Md. Code Ann., Cts. & Jud. Proc. § 3-201 et seq.: (1) the Arbitrator lacked authority to order Dewan personally liable because no arbitration agreement existed between Dewan and Walia; (2) the Arbitrator exceeded her powers and reached an irrational result by ordering damages despite finding the Release enforceable; (3) the Arbitrator's award was the product of "undue means" because of its alleged irrationality; (4) the Arbitrator showed partiality to Walia and demonstrated misconduct prejudicing Appellants' rights; (5) the Arbitrator refused to hear evidence material to the controversy; (6) the Arbitrator was not permitted to award attorney's fees in the form of punitive damages; (7) the Arbitrator unlawfully asserted "continuing jurisdiction" over the controversy; (8) there was no 2009 employment agreement, and therefore no agreement to arbitrate claims arising from Walia's employment after the three-year (Continued)

7

The district court first denied Appellants' petition to vacate the Final Award. Kiran M. Dewan, CPA, P.A. v. Walia, 2012 WL 3156839 (D. Md. Aug. 3, 2012). The court noted its severely circumscribed role in reviewing an arbitration award, and the limited grounds for vacating such an award. The court stated that Appellants' federal-court claims "are almost identical to the ones presented before the arbitration tribunal," and that in bringing the claims Appellants "[e]ssentially . . . have asked [the court] to second-guess the well-reasoned award . . . ." Id. at *9. The court concluded that there was "substantial support for the decisions made by the arbitrator, that the arbitrator did not go beyond the scope of the submissions, and that the arbitrator's determinations were not arbitrary." Id. at *10. The court further concluded that Appellants did not "meet their heavy burden of proof with respect to any of the applicable grounds to vacate an arbitration award under the MUAA." Id.

Appellants filed a motion for reconsideration. The district court issued a memorandum order denying that motion and granting

---

period of the 2006 Employment Agreement; (9) the Arbitrator was prohibited from awarding punitive damages because the 2006 Employment Agreement's arbitration provision did not expressly provide for arbitration of punitive damages; and (10) by filing a DOL action against the Company for unpaid wages, wage shortfalls, and other allegedly unlawful employment conditions, Walia waived any right to arbitrate those claims. J.A. 126-54.

Walia's petition to confirm and enforce the award. Kiran M. Dewan, CPA, P.A. v. Walia, 2012 WL 4356783 (D. Md. Sept. 21, 2012). On October 16, 2012, the court granted Walia's motion for attorney's fees and costs. Kiran M. Dewan, CPA, P.A. v. Walia, 2012 WL 4963827 (D. Md. Oct. 16, 2012).

Appellants timely noticed this appeal.

## II.

## A.

On appeal from the district court's evaluation of an arbitral award, "[w]e review the district court's findings of fact for clear error and its conclusions of law, including its decision to vacate [or confirm] an arbitration award, de novo." Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 190 (4th Cir. 2010).

## B.

As an initial matter, we must determine what body of law controls the resolution of this appeal. The parties' arguments are all based on the MUAA, Maryland's analogue to the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq. The district court acquiesced in the parties' invocation of the MUAA. At oral argument before us, however, the parties were unable to explain why the FAA should not control.

The FAA "supplies not simply a procedural framework applicable in federal courts; it also calls for the application,

9

in state as well as federal courts, of federal substantive law regarding arbitration." Preston v. Ferrer, 552 U.S. 346, 349 (2008). Under § 2 of the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Supreme Court has

> interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause,". . . it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"--that is, "within the flow of interstate commerce."

Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (internal citations omitted). Commerce includes foreign commerce. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (noting that a litigant can compel arbitration under the FAA if able to demonstrate, among other things, "the relationship of the transaction . . . to interstate or foreign commerce . . . ."). The relevant transactions here are the non-immigrant employment application process leading to, and the ultimate execution by the parties of, the 2003 and 2006

10

employment contracts, and, as well, the execution in 2009 of the Release by Walia, a Canadian national. Subject matter jurisdiction plainly exists because Walia is a Canadian national, but "diversity of citizenship--or lack thereof--is not by itself enough to determine the nature of a transaction . . . ." Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012). Here, though, the transactions involving the employment of a Canadian national by an American company pursuant to federal immigration law clearly involved foreign commerce.

The Release states that it "shall be construed and enforced in accordance with the laws of the State of Maryland," J.A. 251, and the 2006 Employment Agreement states that it "shall be governed by and construed according to the laws of the State of Maryland applicable to agreements to be wholly performed therein," J.A. 248. But "a contract's general choice-of-law provision does not displace federal arbitration law if the contract involves interstate [or foreign] commerce." Rota-McLarty, 700 F.3d at 698 n.7; see also Porter Hayden Co. v. Century Indem. Co., 136 F.3d 380, 383 (4th Cir. 1998) (finding that a similar choice-of-law provision could "reasonably be read merely as specifying that Maryland substantive law be applied to resolve disputes arising out of the contractual relationship," and "absent a clearer expression of the parties' intent to

11

invoke state arbitration law, we will presume that the parties intended federal arbitration law to govern the construction of the Agreement's arbitration clause"). The term "evidencing a transaction" in § 2 of the FAA "requires only that the transaction in fact involved interstate commerce, not that the parties contemplated it as such at the time of the agreement." Rota-McLarty, 700 F.3d at 697.

In short, because the employment contracts and the Release evidence and arise out of transactions involving foreign commerce, we hold that the FAA controls.

### III.

Appellants argue, among other things, that the arbitration award must be vacated because it is the product of the Arbitrator's manifest disregard of the law. Specifically, they contend that the Arbitrator could not find the Release valid and enforceable but nevertheless make an award to Walia on claims arising out of his employment with the Company. We are constrained to agree.

"Judicial review of an arbitration award in federal court is 'substantially circumscribed.'" Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (citation omitted). In fact, "'the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate

12

the purpose of having arbitration at all--the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'" MCI Constructors, LLC v. City Of Greensboro, 610 F.3d 849, 857 (4th Cir. 2010) (quoting Three S Del., 492 F.3d at 527). "In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the [FAA] or one of certain limited common law grounds." Id.

The grounds specified in the FAA are: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct . . . ; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

"The permissible common law grounds for vacating such an award 'include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law.'" MCI Constructors, 610 F.3d at 857 (citation omitted).[5] "Under our precedent, a manifest disregard

---

[5] In the wake of the Supreme Court's decision in Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008), this court has recognized that considerable uncertainty exists "as to the
(Continued)

of the law is established only where the 'arbitrator[ ] understand[s] and correctly state[s] the law, but proceed[s] to disregard the same.'" Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 235 (4th Cir. 2006) (citation omitted). Merely misinterpreting contract language does not constitute a manifest disregard of the law. Id. An arbitrator may not, however, disregard or modify unambiguous contract provisions. Id. "Moreover, an award fails to draw its essence from the agreement if an arbitrator has 'based his award on his own personal notions of right and wrong.' . . . In such circumstances, a federal court has 'no choice but to refuse enforcement of the award.'" Id. (citations omitted).

Here, Walia agreed to "release and discharge" Appellants from claims related to Walia's employment in exchange for $7,000. J.A. 250-52. The expansive breadth and scope of the Release are plainly reflected in its plain language, which we set forth in full:

---

continuing viability of extra-statutory grounds for vacating arbitration awards." Raymond James, 596 F.3d at 193 n.13. Nevertheless, we have recognized that "manifest disregard continues to exist" as a basis for vacating an arbitration award, either as "an independent ground for review or as a judicial gloss" on the enumerated grounds for vacatur set forth in the FAA. Wachovia Secs., LLC v. Brand, 671 F.3d 472, 483 (4th Cir. 2012).

14

3. Release. EMPLOYEE, on behalf of himself and his representatives, spouse, agents, heirs and assigns releases and discharges COMPANY and COMPANY'S former, current or future officers, employees, representatives, agents, fiduciaries, attorneys, directors, shareholders, insurers, predecessors, parents, affiliates, benefit plans, successors, heirs, and assigns from any and all claims, liabilities, causes of action, damages, losses, demands or obligations of every kind and nature, whether now known or unknown, suspected or unsuspected, which EMPLOYEE ever had, now has, or hereafter can, shall or may have for, upon or by reason of any act, transaction, practice, conduct, matter, cause or thing or any kind whatsoever, relating to or based upon, in whole or in part, any act, transaction, practice or conduct prior to the date hereof, including but not limited to matters dealing with EMPLOYEE'S employment or termination of employment with the COMPANY, or which relate in any way to injuries or damages suffered by EMPLOYEE (knowingly or unknowingly). This release and discharge includes, but is not limited to, claims arising under federal, state and local statutory or common law, including, but not limited to, the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, claims for wrongful discharge under any public policy or any policy of the COMPANY, claims for breach of fiduciary duty, and the laws of contract and tort; and any claim for attorney's fees. EMPLOYEE promises never to file a lawsuit or assist in or commence any action asserting any claims, losses, liabilities, demands, or obligations released hereunder.

4. Known or Unknown Claims. The parties understand and expressly agree that this AGREEMENT extends to all claims of every nature and kind, known or unknown, suspected or unsuspected, past, present, or future, arising from or attributable to any conduct of the COMPANY and its successors, subsidiaries, and affiliates, and all their employees, owners, shareholders, agents, officers, directors, predecessors, assigns, agents, representatives, and attorneys, whether known by EMPLOYEE or whether or not EMPLOYEE believes he may have any claims and that any and all rights granted to EMPLOYEE under the Annotated Code

15

of Maryland or any analogous state law or federal law or regulations, are hereby expressly WAIVED.

J.A. 250-51. As noted above, the Release provided for "binding arbitration" should a dispute arise concerning the Release or its performance. J.A. 251.

In the Interim Award, the Arbitrator rejected Walia's argument that the Release was unconscionable. She then found that Walia

> knew he was signing a release and chose to sign it. However, he did not know the legal consequences nor the significance of his signature. However, he voluntarily signed it but without consulting an attorney and is now legally bound. Accordingly, all [Walia's] rights for all tort and contractual claims in federal or state courts as well as attorney's fees are now waived.

J.A. 66. The Arbitrator also found that Walia had negotiated the checks "for the composite amount of the Release . . . ." J.A. 66; see also J.A. 69 ("All claims involving Solicitation, Covenant not to Compete and unauthorized release of Confidential Data from the Claimant's CPA firm are dismissed except for the valid execution of the Release (2009) based on Maryland law. Accordingly, [Walia] is precluded from bringing all tort and contractual claims in state and federal courts as well as being precluded from receiving attorney's fees."); J.A. 190 (same, in Final Award).

In sum, the Arbitrator appears to have concluded that the Release sufficed to extinguish Walia's common law and state and

16

federal statutory claims <u>if they were brought in state or federal court</u>, but did not extinguish some or all of such claims <u>if they were brought in an arbitral forum</u>. We find untenable the Arbitrator's attempt to parse the language of the Release so finely.

We agree with Appellants that in purporting to construe "the release and waiver provision to apply only to tort and contractual claims Walia might file in federal or state court," the Arbitrator "rewr[ote] the release, which expressly 'includes, but is not limited to, claims arising under federal, state and local statutory or common law,' and imposes no qualifications whatsoever concerning the forum in which those released claims could have been brought." Appellants' Br. at 37. We have no doubt that Maryland law accords with Appellants' contentions. See <u>Herget v. Herget</u>, 573 A.2d 798, 801 (Md. 1990) (stating that a broad settlement agreement purporting to release all claims, whether known or unknown, is enforceable); <u>Bernstein v. Kapneck</u>, 430 A.2d 602, 606 (Md. 1981).[6]

---

[6] <u>Marcus v. Rapid Advance, LLC</u>, 2013 WL 2458347, at *6 (E.D. Pa. June 7, 2013), succinctly summarized Maryland courts' approach to the interpretation of broad releases:

> Under Maryland law, releases are contracts that are read and interpreted under ordinary contract principles--including, <u>inter alia</u>, the parol evidence rule. <u>Bernstein v. Kapneck</u>, 290 Md. 452, 458-59, 430 A.2d 602 (1981). In <u>Bernstein</u>, the Maryland Court of

(Continued)

The Arbitrator's finding that the Release was valid and enforceable forecloses all of Walia's arguments on appeal that the Release was unconscionable.[7] We do not know how the Arbitrator reached her interpretation of the Release. However, it is clear to us that neither linguistic gymnastics, nor a selective reading of Maryland contract law, could support her conclusion that the Release was enforceable but that Walia's claims were arbitrable anyway.

---

Appeals set out three principles that underlie this conclusion: (1) in the absence of legal barriers, "parties are privileged to make their own agreement and thus designate the extent of the peace being purchased;" (2) in a time of "burgeoning litigation," private settlement of disputes is to be encouraged, and "a release evidencing accord and satisfaction is a jural act of exhalted significance which without binding durability would render the compromise of disputes superfluous, and accordingly unlikely," and (3) according to conventional rules of construction, when a release is stated in clear and unambiguous language, the words should be given their ordinary meaning. Id. at 459–60, 430 A.2d 602. Accordingly, the Court of Appeals instructs that courts interpret releases based on their clear, objective language.

[7] These arguments include that (1) the payment of $7,000 violated Maryland law "by paying Walia much less than he was owed at the alleged termination of his employment in August 2009"; (2) "Dewan failed to advise Walia to seek independent counsel before signing" the Release; and (3) Dewan engaged in "fraudulent and malicious actions both in coercing Walia to sign the Release Agreement and then in presenting evidence in arbitration in seeking to enforce the Release Agreement without paying Walia wages owed him." Appellee's Br. at 34–35.

Objectively viewed, the language of the Release could not be more expansive, clear, or unambiguous. The plain language of the Release fatally undermines the suggestion that Walia retained the right to bring any of his counterclaims in arbitration. The Release waived all claims stemming from his employment relationship with the Company, regardless of forum. Accordingly, we hold that the Arbitrator manifestly disregarded the law by holding the Release valid and enforceable but nevertheless arbitrating Walia's counterclaims arising out of his employment with the Company.[8]

---

[8] Our disposition of this appeal renders it unnecessary for us to determine whether our holding in <u>Venkatraman v. REI Systems, Inc.</u>, 417 F.3d 418, 422-24 (4th Cir. 2005), that a U.S. citizen has no private cause of action against his former employer under the INA, applies to a foreign national who is the beneficiary of the visa program. Relatedly, we need not consider whether, even if no such claim lies in a judicial forum, such a claim might lie in an arbitral forum. We simply hold that under the Arbitrator's finding that the Release is valid and enforceable, she acted in manifest disregard of controlling Maryland law in carving out an exception for some claims that, as she viewed the matter, were retained by Walia.

In any event, Walia concedes that he in fact fully pursued his "required wage" claim before the DOL and that the agency found "no violation" by the Company. <u>See</u> Appellee's Br. at 27. Accordingly, as Walia further concedes, "The compensatory damages awarded by the Arbitrator are based on the agreements between the parties . . . ." <u>Id.</u> at 33. In light of this concession, the conclusion is inescapable that even though the Arbitrator purported to adjudicate and award damages pursuant to an ostensible <u>statutory claim</u> under the INA, it is clear that she in fact awarded damages "based on the agreements between the parties." But as the Arbitrator earlier found, the contractual
(Continued)

19

IV.

For the reasons set forth, we vacate the judgment and remand with instructions that the district court vacate the award.

VACATED AND REMANDED

---

claims had been extinguished by the Release and could not support an award of damages.

WYNN, Circuit Judge, dissenting:

Our review of an arbitrator's award is so "severely circumscribed" that it is "among the narrowest known at law." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998) (footnote omitted). Not surprisingly, then, even an "erroneous interpretation of the agreement in question" cannot serve as a basis for vacating an arbitration award. Id. at 194. Instead, "[a]s long as the arbitrator is even arguably construing or applying the contract[,] a court may not vacate the arbitrator's judgment." Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991) (quotation marks omitted).

In this case, the arbitrator interpreted a release agreement stating that Arun Walia promised "never to file a lawsuit or assist in or commence any action" related to his employment as applying to claims in courts but not to disputes in arbitrations. J.A. 250-51, 66. Because the arbitrator's interpretation, which more than arguably applies the contract, does not manifestly disregard the law, I cannot support overthrowing the arbitrator's award on that basis. Accordingly, I must respectfully dissent.

I.

As the majority notes, Kiran Dewan employed Walia in 2003, but they parted ways in 2009. At the time they parted, Dewan,

21

an attorney, drafted a release agreement that Walia ultimately signed. Under the agreement, Walia "release[d]" and "discharge[d]" claims against Dewan, promising "never to file a lawsuit or assist in or commence any action" relating to his employment. J.A. 250-51. In exchange, Dewan paid Walia $7,000.

The arbitrator concluded that the release agreement was "valid and enforceable" and "[a]ccordingly, all [Walia's] rights for all . . . claims in federal or state courts as well as attorney's fees are now waived." J.A. 66. In other words, the arbitrator concluded that the agreement released Dewan only as to claims asserted in court, not disputes brought to an arbitral forum.

## II.

"As we have made clear repeatedly: Judicial review of an arbitration award in federal court is substantially circumscribed." Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 190 (4th Cir. 2010) (quotation marks and omitted). Indeed, "the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all-the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Id. (quotation marks omitted).

22

We have consistently emphasized that, in reviewing an arbitration award, "a district or appellate court is limited to determine whether the arbitrators did the job they were told to do-not whether they did it well, or correctly, or reasonably, but simply whether they did it." Id. (quotation marks omitted). Thus, in reviewing an arbitrator's contract interpretation, a court "must uphold it so long as it draws its essence from the agreement." Upshur Coals Corp., 933 F.2d at 229 (quotation marks omitted). Stated differently, "[a]s long as the arbitrator is even arguably construing or applying the contract[,]" the reviewing court's conviction that the arbitrator committed "serious error does not suffice to overturn his decision." Long John Silver's Rests., Inc. v. Cole, 514 F.3d 345, 349 (4th Cir. 2008) (quotation marks omitted).

## III.

In this case, the arbitrator reasonably interpreted the agreement to release suits in court but not disputes in arbitration. The release agreement specifically barred "lawsuits" and "actions." J.A. 250-51. Neither term is defined in the release agreement. However, both terms are generally understood to mean proceedings in a judicial forum, not arbitration. See UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319, 329-30 (4th Cir. 2013) (noting that the phrase "actions and proceedings" is generally construed as a judicial

23

proceeding and does not encompass arbitration); see also Black's Law Dictionary 32, 1572 (9th ed. 2009) (defining "action" as "[a] civil or criminal judicial proceeding" and "lawsuit" as "[a]ny proceeding by a party or parties against another in a court of law"). Nowhere did the release agreement state that it barred arbitration. I cannot agree with the majority that interpreting the agreement as releasing suits in court but not arbitration requires "linguistic gymnastics," ante at 19, or an "untenable" attempt to "finely" "parse" the release. Ante at 17.

In contrast to the arbitrator, the majority interprets the agreement as releasing all claims regardless of forum. This interpretation, too, is reasonable and arguably "may be the more logical one." Atalla v. Abdul-Baki, 976 F.2d 189, 194 (4th Cir. 1992) (concluding that a settlement agreement read as a whole did not unambiguously release the plaintiff's claims, despite inclusion of "an all-encompassing release clause," id. at 193). But it is not the only one. Cf. id. at 193-94. The arbitrator thus did not "disregard or modify unambiguous contract provisions," ante at 14, and vacatur on that basis is thus unjustified.

Further, I cannot agree with the majority's statement that the release agreement "could not be more expansive, clear, or unambiguous." Ante at 19. Indeed, the release agreement could

24

have "release[d]" and "discharge[d]" all claims and disputes not just in the form of "lawsuit[s]" or "actions" but "**in any and all forms and in any and all fora**." J.A. 250-51. Or it could have made clear that Walia "promised never to file a lawsuit, or assist in or commence any action **or arbitration or any other form of dispute for adjudication in any forum whatsoever.**" But it did not.

Because the arbitrator unquestionably construed the release agreement at issue, we are not at liberty to substitute our preferred interpretation for the arbitrator's. Upshur Coals Corp., 933 F.2d at 229 ("As long as the arbitrator is even arguably construing or applying the contract[,] a court may not vacate the arbitrator's judgment." (quotation marks omitted)). "*[V]acatur* of an arbitration award is, and must be, a rare occurrence . . . ." Raymond James Fin. Servs., Inc., 596 F.3d at 184. The contract interpretation dispute here simply does not present that rare circumstance justifying our overthrowing an arbitration award. Consequently, I respectfully dissent.

25