PADCO ADVISORS, INC.

v.

Jeffrey M. OMDAHL

No. CIV. A. DKC 2000–212.

United States District Court,
D. Maryland.

Feb. 19, 2002.

Jonathan C. fritts, Morgan, Lewis nd Bockius LLP, Washington, DC, Jeff E. Lowinger, Furey, Doolan and Abell LLP, Chevy Chase, MD, Donald Lawrence Havermann, for Plaintiff.

Eric B. Yarvin, Bethesda, MD, Lester B. Seidel, Seidel, Yarvin & Mervis, LLC, Bethesda, MD, Joseph E. Schuler, Paul J. Kennedy, Maria Ann Perugini, Littler

Mendelson PC, Washington, DC, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Pursuant to the court's order of January 11, 2002,[1] the parties have filed memoranda concerning equitable extension of the injunction against Omdahl. Presently pending and ready for resolution is the issue of the length of the injunction against Omdahl. The issue is fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

### I. Background

On January 11, 2002, this court granted summary judgment in favor of PADCO on its breach of contract claim, finding that Omdahl had violated the covenant not to compete against PADCO after his termination, and asked the parties to address the issues of (1) the availability *vel non* of an equitable extension of the non-compete period under the law, and (2) assuming it is available, whether such relief should be ordered and under what terms and for what period. Paper No. 81, p. 31. Omdahl was subject to a temporary restraining order ("TRO") from June 21, 2000, imposed by the Circuit Court for Montgomery County, extended by this court on July 25, 2000, and has been subject to a preliminary injunction since December 1, 2000, adopting the terms of the TRO and prohibiting meeting with customers of Pro-Fund Advisors.[2]

### II. Analysis

#### A. Standard

■ PADCO argues that an equitable extension of a permanent injunction ex-

tending the term of the Agreement's covenant not to compete is the appropriate remedy which should last for a period of twenty, but no less than twelve, months. Omdahl responds that Maryland authority suggests that an equitable extension is not available, the cases cited by PADCO from other jurisdictions differ substantially from the instant case, and, even if it is available in Maryland, it should not be imposed here as PADCO has had the benefit of its bargain with Omdahl.

Nearly all of the cases PADCO cites to support its argument for equitable extension differ from the instant case because a preliminary injunction was not in place prior to final judgment issuing a permanent injunction. *See Overholt Crop Ins. Service Co. v. Travis*, 941 F.2d 1361 (8th Cir.1991); *Levitt Corp. v. Levitt*, 593 F.2d 463 (2d Cir.1979); *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444 (5th Cir.1971); *Presto–X–Co. v. Ewing*, 442 N.W.2d 85 (Iowa 1989); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882 (1982); *Capelouto v. Orkin Exterminating Co.*, 183 So.2d 532 (Fla.1966). Only one case cited by in PADCO in support of equitable extension held an equitable extension was an appropriate remedy when the defendant was already under a preliminary injunction throughout the litigation period, as Omdahl was. *See Arthur Young & Co. v. Kelly*, 88 Ohio App.3d 343, 623 N.E.2d 1303 (1993). In *Arthur Young,* the court held that the equitable extension was proper "[g]iven the egregious nature of appellant's actions and the considerable period of time over which they occurred." *Id.* at 1309. Omdahl's conduct does not rise to

---

1. See *Padco v. Omdahl,* 179 F.Supp.2d 600 (D.Md.2002).

2. The terms of the injunction are enumerated in the recent Memorandum Opinion granting in part and denying in part PADCO's motion for summary judgment. Paper No. 82, p. 5.

the egregious level described in *Arthur Young,* where the defendant testified that he solicited clients away from his former company prior to his termination. *Id.* at 1306.

■ As this court has previously stated, the test for a restrictive covenant in Maryland is "whether the particular restraint is reasonable on the facts." *Ruhl v. F.A. Bartlett Tree Expert Co.,* 245 Md. 118, 225 A.2d 288, 291 (1967). PADCO has not presented evidence that it is entitled to a full two years of non-employment, more than two years after Omdahl left PADCO. The preliminary injunction has enjoined Omdahl from disclosing PADCO's customer information to any third party. Further, more than two years have passed since Omdahl was employed by PADCO and had access to their database, the customer information has changed since he last accessed it, and any information he can remember is of diminishing value. PADCO has not established that it is entitled to an equitable extension of the injunction beyond the twenty four months contained in the CIA. Not only is there no Maryland law detailing the circumstances under which an equitable extension might be appropriate, but those out of state authorities that do exist would not support such relief under the present circumstances. It remains to determine the remaining length, if any, for the injunctive relief.

### B. Application

■ It is undisputed that Omdahl is entitled to four months of "credit" towards the twenty-four month period for the period from November 30, 1999 until the end of March 2000, when Omdahl commenced employment with ProFund Advisors. The issue remains, though, how the twenty months contracted for in the CIA should be allocated. PADCO's proposal that the twenty month period, in the form of non-employment by ProFund, begin as of the date of this order does not give Omdahl any credit for the period he has been under, successively, a TRO and a preliminary injunction. PADCO has proposed an alternative of twelve months, arguing that Omdahl should receive no credit for the period of late March through late June because no injunction was in effect. In addition, it argues that he should receive no credit for the five-month period during which the TRO was in effect because it alleges he violated it on numerous occasions. PADCO also asserts that ProFund has reaped some competitive benefit from Omdahl's employment, therefore the period during which the preliminary injunction has been in effect should be discounted by four months or more to compensate.

Omdahl replies that he deserves credit for the month of November 1999 because he was given notice in the beginning of the month and PADCO was already "rebuilding". Omdahl then argues that he should receive credit for the period he was subject to the TRO, beginning June 21, 2000. Omdahl asserts that by the end of February it will be twenty-eight months since "PADCO relieved [him] of his duties," so PADCO will have accrued four additional months of non-competition. Omdahl states that "the only equitable remedy would be to extend relief for four months, the length of time equal to the period during which Omdahl engaged in meetings found by the Court to be improper." Paper No. 84, p. 20.

This court held hearings on November 20 and 29, 2000, to determine whether a preliminary injunction should be granted. The court determined on November 20, that the terms of the TRO had not been complied with and that Omdahl was "to have no contact with customers." Hearing Transcript, Nov. 20, 2000, p. 118, 1. 18–19.

On November 29, 2000, this court held that the non-solicitation and non-disclosure provisions of the TRO, clarified on November 20, would remain in place, but that his employment by ProFund Advisors would not be prohibited. Hearing Transcript, Nov. 29, 2000, p. 37–38. That preliminary injunction remains in effect.

■ "A covenant not to compete is enforceable if its duration and geographic area are only so broad as is reasonably necessary to protect the employer's business, and if the covenant does not impose undue hardships on the employee or the public." *Intelus Corp. v. Barton,* 7 F.Supp.2d 635, 641 (D.Md.1998). It is reasonable for PADCO to expect the full twenty-four months of non-competition to which it is entitled, while taking into account that no undue hardship should be borne by Omdahl. Both parties agree that Omdahl did not compete for the four months immediately following the end of his employment with PADCO and both parties agree that Omdahl did engage in activity prohibited by the CIA from late March 2000 until July 24, 2000, the period during which Omdahl was employed by ProFund and met with customers. This court concludes that credit towards the twenty month period should begin on July 25, 2000, the date this court entered a TRO and Omdahl ceased the improper customer meetings. Therefore, the twenty month period prohibiting Omdahl from directly competing with PADCO terminates on March 24, 2002. The permanent injunction adopts the same terms as the preliminary injunction currently in effect, so that a reasonable balance is struck between protecting PADCO's business interests and refraining from placing an undue hardship on Omdahl.

### III. Conclusion

For the reasons stated above, the court will enter a permanent injunction enforcing the non-compete and non-solicitation provisions of the CIA, adopting the terms of the current preliminary injunction, expiring on March 24, 2002. PADCO has also sought damages and attorney's fees (along with court costs) as remedies for the breach of contract. A telephone conference will be held to discuss the schedule for resolving the remaining issues. A separate order will follow.

### ORDER

In accordance with the accompanying Memorandum Opinion and the Memorandum Opinion dated January 11, 2002, IT IS this ____ day of February, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Judgment BE, and the same hereby IS, ENTERED in favor of Padco Advisors, Inc. and against Jeffrey M. Omdahl on the breach of contract claim and Jeffrey M. Omdahl BE, and he IS, hereby ENJOINED as follows:

A. Until March 25, 2002, Jeffrey M. Omdahl is enjoined from soliciting or calling upon or having any personal contact for the purpose of promoting ProFund Advisors' business with any person or entity who is or may become a customer of ProFund Advisors LLC or PADCO, or any of their subsidiaries or affiliates;

B. Until March 25, 2002, Jeffrey M. Omdahl is enjoined from disclosing to any third party, including ProFund Advisors, the name, address, or any other information concerning any person or entity who was a customer or potential customer of PADCO on November 30, 1999, or disclosing any confidential or trade secret information acquired while in the employ of PADCO, as described in paragraph 1 of the Confidential Information Agreement dated November 11, 1997;

C. Until March 25, 2002, Jeffrey M. Omdahl is enjoined from participating in any communication, whether oral, written, or electronic, within ProFund Advisors concerning any particular customer or potential customer of PADCO or ProFund Advisors;

D. Until March 25, 2002, Jeffrey M. Omdahl is enjoined from having his name associated with ProFund Advisors in any material which is or reasonably may be expected to be available to any customer, potential customer, or the public;

E. This Order shall not preclude Jeffery M. Omdahl from remaining employed by ProFund Advisors and shall also not preclude him from the following: (1) communicating with business partners and intermediaries of ProFund Advisors such as insurance companies or fund platforms concerning operational issues after the decision has been made to include a ProFund Advisors product in their portfolio; (2) having his name associated with operational or administrative aspects of ProFund Advisors' business including materials required by federal or state regulatory authorities, email addresses, or contracts entered into on ProFund Advisors' behalf; (3) communicating or participating in communicating within ProFund Advisors about generic groups or classes of customers or potential customers; and (4) communicating with third parties relating to his personal financial or personal business matters or with personal acquaintances about matters unrelated to business;

2. Judgment BE, and the same hereby IS, ENTERED in favor of Jeffrey M. Omdahl and against Padco Advisors, Inc. on the claim under the Maryland Uniform Trade Secrets Act;

3. A telephone conference will be held on Friday, March 8, 2002, at 9:00 a.m. Counsel for Plaintiff is directed to arrange for and initiate the call to counsel for Defendant and the court; and

4. The clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties.