An appropriate Order will issue.[51]

Stephen FRYE, Julie A. Graf
and Ndege Ndogo, Inc.,
Petitioners,

v.

WILD BIRD CENTERS OF
AMERICA, INC.,
Respondent.

Civil Action No. TDC–16–3216

United States District Court,
D. Maryland.

Signed 02/14/2017

Harry M. Rifkin, Law Offices of Harry M. Rifkin LLC, Baltimore, MD, for Petitioners.

Eric L. Yaffe, Whitney A. Fore, Gray Plant Mooty Mooty and Bennett, P.A., Washington, DC, for Respondent.

## MEMORANDUM OPINION

THEODORE D. CHUANG, United States District Judge

Petitioners Stephen Frye, Julie A. Graf, and Ndege Ndogo, Inc., former franchisees of Respondent Wild Bird Centers of America, Inc. ("WBCA"), have filed a Petition to Vacate Arbitration Award seeking to overturn an arbitration award entered in favor of WBCA. The award at issue was based on WBCA's efforts to enforce a two-year non-competition provision included in the parties' franchise agreement. Following an evidentiary hearing, the arbitrator ordered Petitioners to cease violating the non-competition provision for two years beginning on the date Petitioners began to comply with the provision. Petitioners now request that the Court vacate the award because the arbitrator "displayed a manifest disregard of the law" and the award "failed to draw its essence" from the parties' agreement. Pet. Mem. at 1, ECF No. 1–2. In response, WBCA has filed a Petition to Confirm Arbitration Award. For the reasons set forth below, the Petition to Vacate Arbitration Award is DENIED, and the Petition to Confirm Arbitration Award is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In February 2005, Petitioners, all of whom are citizens of Colorado, entered into a franchise agreement with WBCA, a citizen of Maryland, to operate a Wild Bird Center store ("the Store") in Boulder, Colorado (the "Franchise Agreement"). The Franchise Agreement authorized Petitioners to operate a retail business selling "wild bird seed and other products of interest to wild bird enthusiasts, including bird feeders, bird-watching optical equipment, books and other items." Franchise Agreement at 1, Pet. Ex. 1, ECF No. 1–4. The Franchise Agreement granted Petitioners a license to operate its store according to the "Wild Bird Center System," a standard set of retail practices including trade names and trademarks associated with WBCA, such as the name "Wild Bird Center," as well as "marketing and product presentation techniques, distribution of the 'Wild Bird News,' our newsletter, and Wild Bird Center promotional postcards, methods of inventory and operation control, bookkeeping and accounting, and

manuals covering business practices and policies." *Id.* Petitioners were permitted to operate their Wild Bird Center franchise within a defined geographic area, and WBCA agreed that it would not operate any stores or grant any other franchises within that territory during the term of the Franchise Agreement. The Franchise Agreement was to remain in effect for a ten-year period, from January 1, 2005 to December 31, 2014, and stated that upon its expiration, Petitioners would be permitted one additional renewal period of 10 years, provided that certain requirements were met.

The Franchise Agreement imposed certain "Restrictions" on Petitioners. *Id.* ¶ 14. In particular, Paragraph 14(B) ("the Non-Competition Provision") provided that:

> For a period of 24 months after termination of this Agreement for any reason, you will not engage in or acquire any financial or beneficial interest . . . in, or become a landlord of any retail business which is similar to the Store, within the Licensed Territory or within the licensed territory of any other Wild Bird Center franchisee or any Wild Bird Crossing franchisee or within a 20–mile radius of the perimeter of the Licensed Territory or the licensed territory of any other Wild Bird Center franchisee or any Wild Bird Crossing franchisee, or within a 20–mile radius of any Wild Bird Center or Wild Bird Crossing store which we or any of our affiliates operate.

*Id.* ¶ 14(B).

Paragraph 24 of the Franchise Agreement, entitled "Effect of Termination," provided that:

> A. In the event of termination or expiration of this Agreement for any reason, or in the event that you desire prior to the termination of this Agreement, to discontinue the operation of the Store for any reason other than a sale to a third person who has been approved by us, you agree to perform the following obligations:
>
> * * *
>
> (11) You will comply with your obligations under paragraphs 14B and 14D.

*Id.* ¶ 24(A)(11).

The Franchise Agreement also provided for various means of dispute resolution. Under its terms, either party could seek mediation under the Commercial Mediation Rules of the American Arbitration Association ("AAA"). If neither party sought mediation, or if mediation was unsuccessful, the Franchise Agreement called for mandatory arbitration.

On December 17, 2014, an attorney for WBCA sent a letter to Petitioners advising them that the Franchise Agreement would expire on December 31, 2014. The letter represented that WBCA had contacted Petitioners several times between May and October 2014 to discern their intentions, without success. WBCA warned Petitioners that:

> In Section 14 B. of the Franchise [A]greement you also agreed that upon expiration of the Franchise Agreement, you would cease operating any business that is the same as or similar to a Wild Bird Center store for two years and within 20 miles of the current store or any other Wild Bird Center store. Therefore, as of January 1, 2015, you must either close the store or change the merchandise and theme of the store to one unrelated, in any respect and as approved by WBCA, to the current operation.

WBCA Letter at 2, Pet. Ex. 2, ECF No. 1–5. The letter stated that Petitioners or their counsel should contact WBCA in the event of any disagreement with WBCA's position.

After December 31, 2014, Petitioners continued to operate the store as before. During the first half of 2015, the parties engaged in unsuccessful mediation, and on July 15, 2015, WBCA filed a demand for arbitration to collect unpaid fees and to enforce the non-competition restrictions of the Franchise Agreement. In response, Petitioners filed, as part of the arbitration, counterclaims for unjust enrichment and breach of contract.

The arbitrator conducted a five-day evidentiary hearing in Montgomery County, Maryland. Both parties had the opportunity to present witnesses and evidence, cross examine the opposing party's witnesses, and challenge the evidence of the other party. On August 25, 2016, the arbitrator issued a 12–page ruling in which he found in favor of WBCA on the non-competition restrictions but denied its claims for unpaid fees. With respect to the non-competition restrictions, the arbitrator ordered that Petitioners were:

> enjoined from directly or indirectly owning, maintaining, engaging in, or having any interest in any store or retail business (brick and mortar or web-based) that sells principally wild bird seed, gardening products, pet products, and/or other products with a wild bird or garden motif on the Internet or located within a radius of 20 miles of the 'Boulder, Colorado Market' licensed territory, as specifically identified in Exhibit A to the Franchise Agreement, and within a radius of 20 miles of any other store or territory licensed to a Wild Bird Centers of America franchisee as of the date of this Order.

Arbitration Award at 11, Pet. Ex., ECF No. 1–1. The award ordered that the injunction would last for two years from the date Petitioners were first in compliance with the Order.

On September 22, 2016, Petitioners filed the instant Petition to Vacate Arbitration Award. After Petitioners filed an Amended Petition, WBCA filed its Petition to Confirm Arbitration on October 25, 2016 in conjunction with its Opposition to the Petition to Vacate. During a case management conference on November 10, 2016, the parties agreed that no discovery is required, and that the Petitions are ripe for resolution.

## DISCUSSION

Petitioners assert that the arbitrator should not have enforced the Non-Competition Provision because, in their view, that provision applied only upon "termination" of the Franchise Agreement, rather than upon expiration. They further argue that, even if the Non-Competition Provision did apply, it was improper for the arbitrator to order that its requirements would extend for two years from the date of first compliance, rather than from the original expiration date of the Franchise Agreement. Because, in its view, the arbitrator's award drew from the essence of the agreement and did not disregard the law, WBCA requests that the Court confirm the arbitration award.

### I.  Legal Standards

The Federal Arbitration Act ("FAA") provides in part that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9. U.S.C. § 9 (2012). The FAA further provides that a petition to vacate an arbitration award may be brought in "the United States court in and for the district wherein the award was made." *Id.* § 10. Here, the Franchise Agreement contains an arbitration clause which states that, subject to certain exceptions not applicable here, "any controversy or claim arising out of or relating to this Agreement ... will be submitted for arbitration ... on demand of either of us" and that the "arbitration proceedings will be conducted in Montgomery County, Maryland." Franchise Agreement ¶ 31(A). The arbitration clause further provides that the "award and decision of the arbitrator will be conclusive and binding upon you and us and judgment upon the award may be entered in any court of competent jurisdiction." *Id.* ¶ 31(B). Because the award was rendered in Maryland and the petitions were filed within one year, the Court is satisfied that the requirements of the FAA are met, such that it may review the arbitration award.

▮ Judicial review of an arbitration award is "severely circumscribed," and, in fact, is "among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc. v. US. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998) (footnote omitted). "An arbitrator's award is entitled to a special degree of deference on judicial review." *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 228 (4th Cir. 1991). Thus, where

there is a valid contract between the parties providing for arbitration, and the arbitration resolves a dispute within the scope of the arbitration clause, federal courts may vacate the arbitration award only upon a showing of one of the grounds set forth in the FAA, or if the arbitrator acted in manifest disregard of the law. *See Apex Plumbing Supply, Inc.*, 142 F.3d at 193. Section 10 of the FAA enumerates the permissible grounds for vacating an arbitration award: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption" on the part of the arbitrator; (3) the arbitrator was "guilty of misconduct" by which "the rights of any party have been prejudiced"; or (4) the arbitrator's powers were exceeded. 9 U.S.C. § 10(a). Where an arbitration award is challenged, the party opposing the award bears the burden of proving the existence of grounds for vacating the award. *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007).

▮ An arbitrator's interpretation of the law, including contract interpretation, is entitled to great deference and "may only be overturned where it is in manifest disregard of the law." *Upshur Coals Corp.*, 933 F.2d at 229. Although disregarding or modifying unambiguous contract provisions could constitute manifest disregard for the law, *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006), a misinterpretation of a contract, faulty legal reasoning, or an erroneous legal conclusion does not suffice to overturn an award, so long as the interpretation "draws its essence from the agreement," *Upshur Coals Corp.*, 933 F.2d at 229. Rather, the award may be overturned only if the arbitrator must have based the award on "personal notions of right and wrong" or if the arbitrator understood and

correctly stated the law but proceeded to disregard it. *Id.*

## II. The Non-Competition Provision

Petitioners' primary argument is that the arbitrator exceeded his authority, failed to draw the award from the essence of the agreement, and disregarded the law when he enforced the Non-Competition Provision. Petitioners assert that the limitation on competition for "a period of 24 months after termination of this Agreement" is triggered only if a party terminates the Franchise Agreement early and does not apply if the Franchise Agreement simply expires. *See* Franchise Agreement ¶ 14(B). Observing that certain other paragraphs of the Franchise Agreement refer to "termination or expiration," Petitioners assert that "termination" and "expiration" have different meanings, and that the Non-Competition Provision, by referencing "termination" only, applies only to the former.

WBCA contends that the arbitrator's conclusion that the Non-Competition Provision applies upon the expiration of the Franchise Agreement was a fair interpretation entitled to deference. In support of its position, it references Paragraph 24, entitled "Effect of Termination," which despite its title nevertheless sets forth obligations that apply "[i]n the event of termination or expiration." Franchise Agreement ¶ 24(A). In particular, Paragraph 24 states that "[i]n the event of termination or expiration of this Agreement for any reason ... [y]ou will comply with your obligations under" Paragraph 14(B). *Id.* ¶ 24(A)(11). Paragraph 14(B) is the Non-Competition Provision.

Thus, although the use in Paragraph 14(B) of "termination" without reference to "expiration" supports an interpretation that the Non-Competition Provision does not apply when the Franchise Agreement

simply expires, the reference in Paragraph 24 to both "termination" and "expiration" as events that would trigger the Non-Competition Provision indicates that the Provision applies whenever the Franchise Agreement ends, whether by termination before the expiration date or by mere passage of the expiration date without renewal. Because both readings are plausible, the arbitrator did not disregard any "plain and unambiguous" provisions of the Franchise Agreement. *See Patten,* 441 F.3d at 235.

■ Under these circumstances, the pertinent question is not whether the arbitrator's interpretation of the contract is the "best or most accurate reading of the contract," but whether the arbitration award draws its essence from the contract. *Upshur Coals Corp.,* 933 F.2d at 230. "As long as the arbitrator is even arguably construing or applying the contract, a court may not vacate the arbitrator's judgment." *Id.* at 229; *see also Apex Plumbing Supply, Inc.,* 142 F.3d at 194 (stating that even a "questionable" decision by an arbitrator "does not constitute exceeding his power"). Thus, the Court need not decide whether "termination," as used in Paragraph 14(B), encompasses "expiration," or whether Paragraph 24 separately triggers the Non-Competition Provision in the event of expiration. Instead, the Court's task is to determine whether the arbitrator's decision draws from the essence of the Franchise Agreement.

■ The arbitrator's 12–page written decision reflects a reasoned application of the Franchise Agreement. The arbitrator's imposition of the specific non-competition restrictions contained in Paragraph 14(B) plainly derived from the terms of the Franchise Agreement, and his conclusion that those restrictions would apply even when the Franchise Agreement terminated based on expiration is a plausible

reading of the Franchise Agreement, particularly because Paragraph 24 specifically applies the restrictions in Paragraph 14(B) in the event of "termination or expiration." Franchise Agreement ¶ 24(A)(11). The award therefore drew from the essence of the Franchise Agreement and was not based on the arbitrator's "personal notions of right and wrong," *Upshur Coals Corp.*, 933 F.2d at 229, and did not otherwise demonstrate a "manifest disregard of the law," *Apex Plumbing Supply, Inc.*, 142 F.3d at 193. Thus, under the deferential standard of review, there is no basis to vacate this aspect of the arbitration award.

Petitioners' reliance on *Hamden v. Total Car Franchising Corp.*, 548 Fed.Appx. 842 (4th Cir. 2013) (unpublished), is misplaced. In *Hamden*, the court concluded that a non-competition agreement explicitly triggered by "termination" did not apply in the case of the expiration of the contract. *Id.* at 849–50. The court, however, relied on specific prefatory language stating that the restrictions apply if the "Franchise Agreement is terminated before its expiration date," which indicated that the restrictions would not apply upon the mere expiration of the agreement. *Id.* at 847–48 (noting that specific contract interpretations are of "limited persuasive value because not all contracts use the same terms in the same manner"). More importantly, *Hamden* did not involve review of an arbitration award; rather, the court's task in *Hamden* was to resolve breach of contract claims in the first instance. *Id.* at 843. Here, the Court's function is not to decide the merits of the parties' contract interpretation dispute, but to determine whether the arbitrator acted in manifest disregard of the law. Petitioners have not demonstrated, however, that the arbitrator understood and correctly stated the law of contract interpretation but then proceeded to disregard it. *See Upshur Coals Corp.*, 933 F.2d at 229.

Although Petitioners have identified instances in which courts have vacated arbitration awards, those cases present markedly different circumstances not present here. In *Patten*, the court vacated an arbitration award because the arbitrator relied on a limitations period from an agreement that the parties had jointly repudiated and which had been superseded by the "plain and unambiguous" language of a successor agreement. *Patten*, 441 F.3d at 235–36. Here, the arbitrator applied the Franchise Agreement's arguably contradictory terms in a plausible manner. In *Raymond James Financial Services, Inc. v. Bishop*, 596 F.3d 183 (4th Cir. 2010), the court vacated an arbitration award in a wrongful termination dispute when it was apparent that the arbitration panel exceeded its power by basing the award not on the terms of the employment agreements, but on a finding that the employer breached its "fiduciary and legal duties" because an in-house attorney provided legal representation to company employees. *Id.* at 191–93. In *Choice Hotels International, Inc. v. SM Property Management, LLC*, 519 F.3d 200 (4th Cir. 2008), the court vacated an arbitration award because the franchisees were never provided with proper notice of the arbitration proceedings. *Id.* at 208.

Here, the arbitrator's decision to enforce the Non-Competition Provision against Petitioners derived from the essence of the Franchise Agreement and was based on a plausible interpretation of its terms. Where the arbitrator did not act with "manifest disregard of the law," there is no basis to vacate the award. *See Upshur Coals Corp.*, 933 F.2d at 229.

## III. Duration of Non-Competition

Petitioners further assert that even if the arbitrator was correct that expiration

of the Franchise Agreement triggered the Non-Competition Provision, he exceeded his authority by ordering its enforcement for a period of 24 months from the date of Petitioners' first compliance with that provision, rather than for 24 months from the original date of expiration, based on the contract language stating that the Non-Competition Provision is to apply "[f]or a period of 24 months after termination of this Agreement." Franchise Agreement ¶ 14(B). WBCA argues that the arbitrator's decision should be upheld because the arbitrator's decision is founded "in the parties' bargained-for decision to have two years of non-competition upon the termination or expiration of the agreement" and is consistent with Maryland law. Resp. Mem. at 14–15, ECF No. 12. In the alternative, WBCA proffers the theory that Petitioners, by continuing to operate the Store as a WBCA franchise and to use WBCA proprietary information after the date of expiration, effectively extended the length of the Franchise Agreement such that it was not actually terminated, and the 24–month non-competition period did not take effect, until after the arbitrator's ruling.

█ The Court upholds the arbitrator's determination to enforce the Non-Competition Provision for 24 months after first compliance. It is undisputed that Petitioners did not comply with the requirements of the Non-Competition Provision, and in fact openly operated the Store in violation of its terms, between the date of expiration, December 31, 2014, and the date of the arbitrator's award, August 25, 2016. At the time of the award, therefore, the two-year period following the date of expiration had only four months remaining. Had the arbitrator deemed the non-competition period to have begun on December 31, 2014, Petitioners would have been subject to the Non-Competition Provision only for approximately four months. By instead enforcing the Non-Competition Provision for two years from the date of Petitioners' first compliance with its terms, the arbitrator ensured that Petitioners would be subject to its requirements for the length of time originally agreed to by the parties.

Courts have equitably extended the expiration date of a non-competition provision to ensure enforcement for the originally contemplated length of time. For example, in *PADCO Advisors, Inc. v. Omdahl*, 185 F.Supp.2d 575 (D. Md. 2002), the court held that a two-year non-competition agreement would be extended to account for past periods of non-compliance because "it is reasonable for [the company] to expect the full twenty-four months of non-competition to which it is entitled" under the agreement. *Id.* at 578 (applying Maryland law). Other courts have taken the same approach. *See, e.g., Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371–72 (8th Cir. 1991) (extending an injunction against competition past the original expiration date of a restrictive covenant to provide for a full two-year period of enforcement); *Premier Indus. Corp v. Texas Indus. Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971) (upholding an extension of ah injunction that had been stayed to allow for a "meaningful period" of enforcement); *TEKsystems, Inc. v. Bolton*, No. RDB-08-3099, 2010 WL 447782, at *9–10 (D. Md. Feb. 4, 2010) (ordering enforcement of a non-competition provision past the original expiration date because the company was "entitled to receive credit for the entire 18 month prohibition against competition that is contained in the Agreement"). Failure to enforce such provisions for the originally agreed-upon time period would "reward the breach of contract, encourage protracted litigation, and provided an incentive to dilatory tactics." *PADCO Ad-*

*visors, Inc. v. Omdahl,* 179 F.Supp.2d 600, 613 (D. Md. 2002).

Contrary to Petitioners' claim, WBCA had no obligation under the Franchise Agreement to seek a preliminary injunction to compel immediate compliance with those requirements. Although WBCA had that option, it also had the option under the Franchise Agreement to pursue mediation and should not be penalized for taking that reasonable course and declining to pursue litigation immediately. Notably, Petitioners also had the option to honor the Franchise Agreement during mediation and cease operating as a WBCA franchise. As a matter of equity, it should not be rewarded for blatantly breaching its contract, including by not even bothering to remove the WBCA sign from the Store after the expiration of the Franchise Agreement. *See id.*

Accordingly, the arbitrator's decision to enforce the Non-Competition Provision for two years after the date of first compliance comported with the law and thus did not exhibit "manifest disregard of the law." *Upshur Coals Corp.,* 933 F.2d at 229. By grounding the time period for enforcement of the Non-Competition Provision in the original terms of the Franchise Agreement, the arbitrator rendered an award that "draws its essence from the agreement." *Id.* The Court therefore has no basis to vacate this aspect of the arbitration award.

## IV. Confirmation of the Arbitration Award

Having determined that the enforcement of the Non-Competition Provision neither failed to draw from the essence of the Franchise Agreement nor exhibited manifest disregard for the law, the Court considers WBCA's Petition to Confirm the Arbitration Award. Nothing in the record suggests that any of the limited grounds for setting aside an arbitration award is present in this case. Accordingly, the Court will grant the Petition to Confirm the Arbitration Award to the extent it seeks confirmation of the award and judgment on behalf of WBCA. Because the arbitrator did not award damages, neither pre-judgment nor post-judgment interest shall be awarded. Pursuant to Federal Rule of Civil Procedure 54(d)(1), Petitioners shall pay WBCA's costs other than attorney's fees.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Petition to Vacate the Arbitration Award is DENIED. The Petition to Confirm the Arbitration Award is GRANTED IN PART and DENIED IN PART. The award is confirmed, judgment is entered on behalf of WBCA, and costs of this action are awarded to WBCA. No pre-judgment or post-judgment interest is awarded. A separate Order shall issue.